UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CASARA O.,

           Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
_____

**DECISION AND ORDER**

6:23-CV-06446 EAW

# **INTRODUCTION**

Represented by counsel, plaintiff Casara O. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 5; Dkt. 9), and Plaintiff's reply (Dkt. 10). For the reasons discussed below, Plaintiff's motion (Dkt. 5) is denied and the Commissioner's motion (Dkt. 9) is granted.

## BACKGROUND

Plaintiff protectively filed her application for SSI on January 29, 2021. (Dkt. 4 at 20, 198-204).[1] In her application, Plaintiff alleged disability beginning February 16, 2020. (*Id.* at 20, 198). Plaintiff's application was initially denied on April 28, 2021, and on reconsideration on May 12, 2021. (*Id.* at 20, 86-97, 102-15). At Plaintiff's request, a telephone hearing was held before administrative law judge ("ALJ") William Ross on May 2, 2022. (*Id.* at 20, 34-60). On May 23, 2022, the ALJ issued an unfavorable decision. (*Id.* at 20-29). Plaintiff requested Appeals Council review; her request was denied on June 12, 2023, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10). This action followed.

## LEGAL STANDARD

**I.    District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement, *id*. § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since January 29, 2021, the application date. (Dkt. 4 at 22).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: bipolar disorder, posttraumatic stress disorder (PTSD), borderline personality disorder,

anxiety disorder, and attention deficit disorder (ADD). (*Id.*). The ALJ further found that Plaintiff's asthma, fifth metatarsal neck fracture, and history of cocaine abuse were non-severe, and her back pain failed to constitute a medically determinable impairment. (*Id.* at 22-23).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 23). The ALJ particularly considered the criteria of Listings 12.02, 12.04, 12.06, and 12.15, in reaching his conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> [Plaintiff] can perform simple, routine and repetitive tasks over an 8-hour workday within a normal break schedule. She can make simple work-related decisions. [Plaintiff] can occasionally interact with supervisors and co-workers. She can interact with the public on an occasional basis, provided interaction requires no more than exchange of non-personal work-related information or handoff of products or materials. [Plaintiff] can tolerate simple routine changes in a work setting.

(*Id.* at 25). At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 28).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of marker, small parts assembler, or hand packer. (*Id.* at 29). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.*).

## II. The ALJ's Determination is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to vacate the ALJ's decision, arguing that the ALJ: (1) failed to properly develop the record; and (2) erred in his assessment of medical opinion evidence. The Court is not persuaded by these arguments, for the reasons discussed below.

### A. Development of the Record

Plaintiff contends that the ALJ's decision was based on an incomplete record. (Dkt. 5-1 at 6-10). Specifically, she argues that she had a long treatment history at the Catholic Family Center in Rochester, New York, and that the full records from that treatment were not produced to the ALJ. As evidence, she cites a form completed by Catholic Family Center Nurse Practitioner Victoria Briggs dated April 2022, which indicates that Plaintiff was in counseling twice a month and received medication management every one or two months. Because the administrative record only contains treatment records through March 2021, Plaintiff contends that there should exist additional treatment records between March 2021 and April 2022 that were not before the ALJ.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Specifically, the ALJ must "investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). "The ALJ must 'make every reasonable effort' to help the claimant get medical reports from his or her medical sources as long as the claimant has permitted the ALJ to do so." *Sotososa v. Colvin*, No. 15-CV-854-FPG, 2016 WL 6517788, at *3 (W.D.N.Y. Nov. 3, 2016) (quoting *Pratts v. Chater*,

94 F.3d 34, 39 (2d Cir. 1996)). However, the ALJ's duty to develop the record is not limitless. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information. . . ." *Rosa*, 168 F.3d at 79 n.5 (internal quotation marks and citation omitted).

At the hearing, the ALJ inquired of Plaintiff's counsel whether the record was complete. The ALJ stated:

> Well, I'll run down what I have. 1F, I have Catholic Family Center, Inc. from June of 2020 to July of 2020; second exhibit is Strong Memorial Hospital from May of 2020 to January '21; third exhibit is from Brown Square Health Center, January' 20 to January '21; the fourth exhibit is University of Rochester Medical Center, February 2019 to March of '21; fifth exhibit is a CE psychiatry from April of '21; six and seven are DDS medical evaluation documents; 8F is from Strong Memorial from May of '21 to August of '21; 9F is a Catholic Family Center from June of '20, and 10F is Victoria B[r]iggs from April of 2022.

(Dkt. 4 at 38). After confirming that the correct documents were in the record, the ALJ asked, "Okay. So otherwise, [is] there any outstanding evidence?" and Plaintiff's counsel responded, "No, all requested records are in at this time, Your Honor." (*Id.* at 39-40). The ALJ then confirmed that "the record's complete." (*Id.* at 40).

While Plaintiff now contends that NP Briggs' statement that Plaintiff received counseling twice a month suggests that there should be treatment records after March 2021, her argument rests on speculation. *See Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018) (holding that "theoretical possibility [that missing records exist] does not establish that the ALJ failed to develop a complete record"); *Reginald R. v. Comm'r of Soc. Sec.*, No. 6:21-CV-06326 CJS, 2023 WL 5608869, at *16 (W.D.N.Y. Aug. 30, 2023) ("[T]he

Court finds that such speculative arguments [that there may be additional missing records] fall short of demonstrating that there were actual, obvious gaps which the ALJ failed to develop."); *Debiase v. Saul*, No. 3:19 CV 68 (RMS), 2019 WL 5485269, at *8 (D. Conn. Oct. 25, 2019) ("The ALJ does not have a duty to secure records based on an unarticulated speculation and no evidence of a gap in the record.").

In addition, Plaintiff's argument runs contrary to the representation from counsel at the hearing that there were no additional records outstanding and the record was complete. *See Gregory B. v. Comm'r of Soc. Sec.*, No. 7:23-CV-01011-GRJ, 2024 WL 2304689, at *7 (S.D.N.Y. May 17, 2024) ("When asked at the administrative hearing whether the record was complete, Plaintiff's counsel identified outstanding reports from Dr. Bernstein and Dr. Warren, and the ALJ agreed to hold the record open to allow counsel time to obtain the documents and supplement the record. . . . Counsel stated that the record was otherwise complete. . . . In February of 2022, counsel submitted the records and confirmed that no further records were outstanding. . . . Based on the foregoing, the Court has no trouble concluding that the ALJ satisfied his duty to develop the record." (citations omitted)); *Melissa I. o/b/o R.J.R.D. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1799 (WBC), 2022 WL 3358138, at *4 (W.D.N.Y. Aug. 15, 2022) ("Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record -- indeed, to exhort the ALJ that the case is ready for decision -- and later fault the ALJ for not performing a more exhaustive investigation.") (citing *Lindsay B. v. Comm'r of Soc. Sec.*, No. 20-CV-00897, 2021 WL 4912588, at *4 (W.D.N.Y. Oct. 21, 2021)).

On these facts, it was reasonable for the ALJ to conclude that there were no obvious gaps in the record. Moreover, even if additional treatment notes from NP Briggs existed, the medical source statement she completed was prepared two weeks prior to the hearing before the ALJ. Thus, any information contained in NP Briggs' treatment records would presumably be encompassed in her medical source statement, an additional reason to conclude that there was not an obvious gap in the record obligating the ALJ to further develop the record and inquire whether additional treatment records existed. *See Kaitlynn K. v. Comm'r of Soc. Sec.*, No. 20-CV-1878MWP, 2023 WL 2165179, at *6 (W.D.N.Y. Feb. 22, 2023) ("Regarding the other records identified by plaintiff, such records, to the extent they exist, appear cumulative of the information already obtained and thus do not create a gap warranting remand.").

In sum, there was ample evidence in the record for the ALJ to rely upon in making his assessment, including medical opinions and a fulsome treatment record. Under these circumstances, the Court does not find that there was an obvious gap in the record or that the ALJ failed to satisfy his duty. The Court finds no basis for reversal or remand based on the ALJ's development of the record.

## B. Evaluation of Medical Opinions

Next Plaintiff argues that the ALJ failed to evaluate the medical opinion of NP Briggs in accordance with the regulations. (Dkt. 5-1 at 10-15).

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). It is well-settled that an ALJ's conclusion

need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id*. However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quoting *Dailey v. Astrue*, No. 09-cv-0099, 2010 WL 4703599, *11 (W.D.N.Y. Oct. 26, 2010)). In other words:

> An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion. . . .' This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (citations omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted). However, at bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021).

Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id*. Those factors include: (1) supportability; (2) consistency; (3)

relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at § 416.920c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id*. at § 416.920c(a). With respect to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(1). With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 416.920c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id*. at § 416.920c(b). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G.*

*v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted). Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical source's opinion. 20 C.F.R. § 416.920c(b)(2). The ALJ may—but is not required to—explain how he considered the remaining factors. *Id.*

NP Briggs completed a mental residual functional capacity questionnaire on April 20, 2022. (Dkt. 4 at 1037-41). In it, she identified Plaintiff's diagnoses of bipolar and borderline personality disorder. (*Id.* at 1037). She noted Plaintiff's prescribed medications of citalopram, Trileptal, and hydroxyzine, which have the side effects of fatigue. (*Id.*). NP Briggs described clinical findings that demonstrated the severity of Plaintiff's mental impairment and symptoms as mood swings, anger, impulsivity, and depression. (*Id.*). She indicated that Plaintiff's prognosis is stable if she stays on medication. (*Id.*). NP Briggs opined that Plaintiff is seriously limited in completing a normal workday and workweek without interruptions from psychologically based symptoms. (*Id.* at 1039). The form asks the provider to explain any limitations falling in the three most limited categories (*i.e.*, "seriously limited," "unable to meet competitive standards," and "no useful ability to function") and to include the medical/clinical findings that support the assessment, but no explanation is provided by NP Briggs for this opinion. (*Id.*). NP Briggs further opined that Plaintiff is limited but satisfactory in a number of other categories, including her ability to understand and remember instructions, deal with the stress of semiskilled and skilled work, interact appropriately with the general public, or use public transportation. (*Id.* at 1039-40). NP Briggs estimated that on average, Plaintiff's impairments would cause her

to be absent from work about four days per month. (*Id.* at 1041). Finally, she concluded that Plaintiff would not be able to engage in full-time competitive employment on a sustained basis. (*Id.*).

The ALJ found NP Briggs' opinion to be unpersuasive, explaining that:

> The undersigned did not find mental residual functional capacity questionnaire completed by Victoria Briggs to be persuasive (Ex. 10F). The limitations contained therein as to her inability to maintain a full-time work schedule and her being absent 4 days a month are not supported by [Plaintiff's] largely benign clinical presentation to her outpatient providers and the examining psychological consultant (Exs. 1F, 5F, and 9F). At her June 29, 2020, Catholic Family Center comprehensive assessment, [Plaintiff] presented with an euthymic mood, a full affect, a cooperative attitude, clear speech, logical thought processes, normal thought content, normal cognition, no delusions, normal insight, and normal judgment (Exs. 1F and 9F). At her DDS consultative examination, [Plaintiff] presented clinically with an euthymic mood and full range affect, appropriate eye contact, normal motor activity, fluent and clear speech, normal thought processes, clear sensorium, full orientation, fair-to-good insight/judgment, and intact recent and remote memory skills with 3/3 immediate and delayed recall (Ex. 5F). She showed evidence of impaired attention and concentration by virtue of errors on serial-7's and serial 3's computations but she was able to count and perform simple computations (Id.). Moreover, the consultative examiner noted that her psychiatric problems did not appear significant enough to interfere with the claimant's ability to function on a daily basis (Id.). Indeed, the author provides no supporting rationale for these limitations, but noted that her prognosis was stable if she stayed on her medications. Additionally, the opinion is inconsistent with [Plaintiff's] reported activities and abilities, which include caring for 2 young children, working part-time for Door Dash, preparing meals, cleaning, shopping, using public transportation, and doing

>laundry. The opinion also reaches the ultimate determination of disability, which is a legal issue reserved for the Commissioner.

(*Id.* at 40).

Plaintiff argues that the ALJ failed to provide a sufficient rationale for not crediting NP Briggs' opinion that Plaintiff would have difficulty maintaining a regular work schedule and improperly emphasized her activities of daily living. The Court disagrees.

At the outset, the Court notes that Plaintiff's argument largely amounts to a disagreement with the ALJ's weighing of the medical evidence in connection with his assessment of the opinion. But it is not for the Court to reweigh the evidence, as it is the ALJ's duty to resolve conflicts among medical evidence in the record. *See Smith v. Berryhill*, 740 F. App'x 721, 725 (2d Cir. 2018) ("The ALJ could have reached a different conclusion on the disputed medical record, but we defer to the ALJ's disability determination when it is supported by substantial evidence."); *Bryan F. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0055-DB, 2021 WL 1737760, at *5 (W.D.N.Y. May 3, 2021) ("[I]t is within the ALJ's discretion to resolve genuine conflicts in the evidence. . . . In so doing, the ALJ may 'choose between properly submitted medical opinions.'" (citation and quotation omitted)); *see also Joanna O. v. Comm'r of Soc. Sec.*, No. 1:21-CV-130-DB, 2024 WL 580348, at *11 (W.D.N.Y. Feb. 13, 2024) ("When subjective allegations are at issue (as opposed to objective evidence), the discretion and role of the adjudicator as the factfinder becomes even more important to resolve the conflict.").

The ALJ provided specific reasons for not finding NP Briggs' opinions to be persuasive, including the opinions' inconsistency with the information contained in Plaintiff's June 29, 2020 Catholic Family Center comprehensive assessment and Plaintiff's

DDS consultative examination. The ALJ also appropriately considered Plaintiff's largely benign clinical presentation in contrast to NP Briggs' opinion, NP Briggs' failure to provide supporting rationale for the limitations she identified, and her statement that Plaintiff's prognosis was stable while on medication. *See Kentrel J. v. Comm'r of Soc. Sec.*, No. 1:21-CV-197-DB, 2023 WL 2601971, at *8 (W.D.N.Y. Mar. 22, 2023) (holding that ALJ properly considered that "there was no evidence of any psychiatric hospitalizations or emergency room visits, and, overall, the record showed that Plaintiff had received routine and conservative mental health treatment, and his mental health symptoms were generally well controlled with medication" in assessing opinion evidence); *Thomas v. Comm'r of Soc. Sec.*, 479 F. Supp. 3d 66, 89 (S.D.N.Y. 2020) (courts "have specifically recognized that a pattern of conservative medical treatment, such as mental health treatment with medication and therapy but not in-patient or hospitalization care, is a proper factor for an ALJ to consider in evaluating a claimant's credibility." (internal citation and quotation omitted)). The explanation by the ALJ thus satisfied his duty under the regulations.

Moreover, it was not inappropriate for the ALJ to consider the consistency of the opinion with Plaintiff's reported activities of daily living. Specifically, the ALJ cited the fact that Plaintiff cares for her two young children, works part-time as a Door Dash driver, prepares meals, cleans, shops, does laundry, and uses public transportation. (Dkt. 4 at 28). While it is true that the capability to perform activities of daily living is not inherently inconsistent with a finding of disability, "[t]he law is clear that the ALJ may consider . . . [a claimant's] purported activities of daily living for the purposes of a credibility

determination." *Cahill v. Astrue*, No. 1:11-CV-148, 2012 WL 3777072, at *5 (D. Vt. Aug. 29, 2012). Indeed, the Commissioner's regulations expressly identify "daily activities" as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3)(i).

In considering activities of daily living, "[t]he issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence." *Morris v. Comm'r of Soc. Sec.*, No. 5:12-CV-1795 MAD/CFH, 2014 WL 1451996, at *6 (N.D.N.Y. Apr. 14, 2014). The ALJ's comparing of Plaintiff's activities of daily living to restrictions set forth in medical opinions is appropriate. *Rusin v. Berryhill*, 726 F. App'x 837, 840-41 (2d Cir. 2018) (finding it proper for ALJ to consider activities of daily living when evaluating medical opinion evidence and claimant's testimony in determining RFC); *Lakesha R. v. Comm'r of Soc. Sec.*, No. 5:23-CV-00918 (AMN/ML), 2024 WL 3649904, at *10 (N.D.N.Y. June 11, 2024) ("At their most basic, the amended regulations require that the ALJ explain her findings regarding the supportability and consistency for each of the medical opinions, pointing to specific evidence in the record supporting those findings. . . . The ALJ did so here, by evaluating each physician's own narrative, the broader treatment record, and Plaintiff's activities of daily living against the opined limitations." (internal quotations and citations omitted)), *report and recommendation adopted*, 2024 WL 3517733 (N.D.N.Y. July 24, 2024). Accordingly, remand is not required on this basis.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 9) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 5) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: August 28, 2024
Rochester, New York